UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMAINE MCFARLAND,

        Petitioner,

  v.                                                                          Case No. 07-C-1134

JODINE DEPPISCH,

        Respondent.

**ORDER**

On December 20, 2007, Jermaine McFarland filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. McFarland was convicted in Milwaukee County Circuit Court of first degree reckless injury with use of a dangerous weapon, endangering safety by reckless use of a firearm, and being a felon in possession of a firearm, each as a habitual criminal, and was sentenced to 37 years imprisonment. A jury found that McFarland had shot Illeana McNeal-Veasley multiple times through the door to her Milwaukee residence in the early morning hours of October 10, 1999, and seriously injured her. He is currently incarcerated at Fox Lake Correctional Institution.

I must give the case prompt initial consideration pursuant to Rule 4 of the Rules Governing § 2254 Cases, which reads:

> If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified. Otherwise the judge shall order the respondent to file an answer.

Rule 4, Rules Governing § 2254 Cases. During my initial review of habeas petitions, I look to see whether the petitioner has set forth cognizable constitutional or federal law claims. Before reaching that issue, however, it is first necessary to determine whether McFarland's petition is barred as a second or subsequent petition under 28 U.S.C. § 2244(a)(2).

This is clearly McFarlane's second petition for federal relief under 28 U.S.C. 2254. On September 7, 2007, McFarland filed an almost identical petition that was assigned to Chief Judge Randa. Judge Randa dismissed two of the sixteen claims McFarland had asserted in that petition for failure to state a claim and, finding that McFarland had not completely exhausted his state court remedies as to several of the remaining claims, ordered him to elect either to withdraw the unexhausted claims and proceed only on the exhausted claims, or withdraw the entire petition until state court proceedings on the unexhausted claims were complete. *See McFarland v. Deppisch,* Case. No. 07-C-805. Although McFarland requested reconsideration on the ground that the statement in his petition that he was awaiting a decision of the Wisconsin Supreme Court on several of his claims was erroneous, the Court declined to change its ruling that he had filed a mixed petition and was required to elect to withdraw the unexhausted claims or the entire petition. When McFarland failed to make an election, the Court dismissed his petition without prejudice. McFarland filed a notice of appeal, but later moved to dismiss the appeal. The motion was granted and his appeal was dismissed on December 28, 2007, one week after he filed this action in which it appears he omitted the claims Judge Randa found unexhausted.

"Second or successive" petitions for relief under 28 U.S.C. § 2254 are generally not allowed. *See* 28 U.S.C. § 2244(a). An exception to this general rule barring a second "kick at the can" exists, however, where the first petition was dismissed because of a curable technical deficiency, so that

2

the dismissal is not final and therefore is without prejudice. *Pavlovsky v. Vannatta*, 431 F.3d 1063, 1064 (7th Cir. 2005) (citations omitted). In such circumstances, the actual first petition does not count as a first petition, and the second petition becomes the first. *Id.* (citations omitted). "The idea is that the [petitioner] is entitled to one clean shot at establishing his entitlement to relief in a federal habeas corpus proceeding." *Id.* (citations omitted). Because the district court's dismissal of McFarland's first habeas petition was for failure to exhaust and without prejudice, it does not count against him as his first petition. *Slack v. McDaniel*, 529 U.S. 473, 487 (2000); *Benton v. Washington*, 106 F.3d 162, 164 (7th Cir. 1996). And because he has apparently omitted the claims Judge Randa found unexhausted and there appear to be no state court remedies that remain, I will proceed to screen his petition.

This is not to say, however, that McFarland has provided the state courts a full opportunity to review each of the claims he seeks to assert here. Indeed, it appears from the petition and its attachments that he did not. Whether such failure falls under one of the exceptions to the exhaustion requirement, *see Murray v. Carrier*, 477 U.S. 478, 495-96 (1986), can be addressed later in the event any of his claims survives my initial review. It is to that review that I now turn.

**A. Confrontation Clause**

McFarland claims that his rights under the Confrontation Clause of the Sixth Amendment were violated when the prosecution was allowed to introduce hearsay evidence at his trial that suggested he may have had a motive for the shooting. Although he does not recount the alleged hearsay testimony in his petition, McFarland states in his supporting memorandum that it includes testimony by certain witnesses that Ray claimed to know who shot McNeal-Veasley and was bragging about the shooting, that Ray was angry at McNeal-Veasley and blamed her for breaking

3

into her home, that Ray believed that McNeal-Vealey gave McFarland a venereal disease, and that Ray was close to McFarland and the two had lived together at one time. McFarland contends that the admission of this testimony violated his rights under the Confrontation Clause of the Sixth Amendment, which reads, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

While it is possible that the actual testimony offered does not constitute hearsay, or falls within an exception, see Wis. Stat. § 908.03(3) (statement of declarant's then existing state of mind not hearsay), and thus would not violate McFarland's right of confrontation, I am unable to make that determination from the face of the petition and the attached exhibits. I therefore conclude that McFarland has raised at least a colorable constitutional issue under the confrontation clause. Since he also claims that his Sixth Amendment right to effective assistance of counsel was violated when his attorney failed to object to the challenged testimony, it follows that he may also proceed with that claim as well. Ineffective assistance of counsel is clearly a constitutional ground for habeas relief under *Strickland v. Washington*, 466 U.S. 668 (1984).

**B. Ineffective Assistance of Counsel**

McFarland asserts multiple other claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." *Id.* at 687. If the court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *See Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). I will address each of his claims in turn.

4

### 1. Failure to object to multiplicitous charges

McFarland claims trial counsel provided ineffective assistance by failing to challenge, on multiplicity grounds, the charges of first-degree reckless injury with the use of a dangerous weapon and endangering safety by use of a dangerous weapon. However, "the Double Jeopardy Clause is not offended when a defendant is convicted under two provisions, so long as 'each provision requires proof of a fact which the other does not.'" *U.S. v. Ghilarducci,* 480 F.3d 542, 550 (7th Cir. 2007) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If two provisions differ in this manner, it is presumed that the legislature intended to allow cumulative punishments, absent indication of contrary legislative intent. The Wisconsin Court of Appeals concluded that each of the charges brought against McFarland required proof of a fact which the other did not. For example, the court concluded that the offense of endangering safety by use of a dangerous weapon required that a firearm be discharged, whereas the offense of first-degree reckless injury did not, and that the latter offense, unlike the former, required that the defendant caused great bodily harm. The court indicated that McFarland did not offer any argument to rebut the presumption that the legislature intended cumulative punishment. Thus, the court properly applied controlling federal precedent to determine that the charges were not multiplicitous and counsel was not ineffective for failing to challenge the charges on that basis.

### 2. General comments of counsel

McFarland also contends that counsel provided ineffective assistance by making comments that indicated he was not providing "reasonable representation." (Pet. 7.) He does not indicate the nature or content of these comments. Because McFarland contends that he exhausted the claim, I will infer that he intends to raise the same allegation he made on direct appeal, that comments made

5

to him by counsel suggested counsel was not concerned with his case and wanted it to be over. As the Wisconsin Court of Appeals observed, even if counsel made such comments, McFarland fails to explain how counsel's general attitude constituted prejudicial ineffective assistance. This claim will be dismissed as well.

### *3. Failure to object to prosecutor's comments*

McFarland alleges that trial counsel was ineffective for failing to object to the prosecutor calling McFarland a "gun toting felon" during the prosecutor's opening statement and closing argument. (Pet. 7.) On direct appeal, the Wisconsin Court of Appeals rejected this argument, noting upon review of the transcript that the prosecutor made no such comment in his opening statement, and concluding that because McFarland testified that he was a felon and drug dealer and there was evidence that McFarland was the shooter, the prosecution's comment in his closing statement that McFarland was a "gun toting drug dealer" did not exceed the scope of permissible argument. The Seventh Circuit has held that a prosecutor is "free to comment legitimately and speak fully, although harshly, upon the action and conduct of the accused, if the evidence supports his comments." *United States v. Cook*, 432 F.2d 1093, 1096 (7th Cir. 1970); *see U.S. v. Durham*, 211 F.3d 437 (7th Cir. 2000) (holding "there is nothing objectionable in the prosecutor's description of the defendant as a 'slick little dope dealer' who 'uses kids and exploits them to peddle poison.'"). Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Here, even if McFarland could establish that the comments were improper, and counsel's

6

performance deficient, the claim still fails, because he has not alleged how these comments could have prejudiced his case and affected the outcome of his trial. This claim too will be dismissed.

*4. Counsel's comments during voir dire*

McFarland also claims trial counsel was ineffective because counsel explained during voir dire that he was appointed to represent McFarland, who could not afford to retain private counsel. The Wisconsin Court of Appeals concluded that counsel's comments did not result in prejudice, where the trial court instructed the potential jurors that the statement was not material in any way, and questioned whether any member of the panel would be biased or prejudiced by the statement. The court noted that the only potential juror who indicated any concern was not selected to be on the jury, and that McFarland did not suggest any way in which he was prejudiced by his attorney's comments. The court's conclusion is a reasonable application of the *Strickland* analysis. Therefore, the claim will be dismissed.

*5. Failure to object to in-court demonstration*

McFarland next alleges ineffective assistance of trial counsel based on counsel's failure to object to an in-court demonstration in which the victim stood behind the actual door that had been damaged in the shooting and explained what she had done that night. The Wisconsin Court of Appeals determined that the demonstration was relevant to elements of the offenses charged and counsel's performance was not deficient for failing to object. Federal review of state evidentiary rulings is limited to situations where the alleged error results in the denial of a specific constitutional right or of fundamental fairness. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 757 (7th Cir. 1976). McFarland does not suggest that the demonstration rendered his trial fundamentally unfair,

7

nor does he attempt to rebut the strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Accordingly, this claim will be dismissed.

*6. Failure to subpoena relevant witnesses*

McFarland claims trial counsel should have subpoenaed Rochelle Ray, Michael Franklin, and Rachel Watson as witnesses at trial. Failure to subpoena a witness may constitute deficient performance and ineffective assistance of counsel. *See Goodman v. Bertrand*, 467 F.3d 1022 (7th Cir. 2006). On direct appeal, McFarland claimed subpoenas should have been issued for Ray, Franklin, and McFarland's mother. McFarland did not raise the issue of counsel's ineffectiveness for failure to subpoena Rachel Watson in any state court proceeding, and offers no reason for his failure to do so. Furthermore, he fails to indicate what this witness would have testified to. The Wisconsin Court of Appeals concluded that McFarland's claim regarding Franklin was underdeveloped as he did not indicate what this witness would have testified to, and his present claim fails in this same respect. As such, it is impossible to conclude that McFarland's attorney performed deficiently by failing to subpoena Franklin.

As to Ray, McFarland alleges that she would have testified in his favor, recanting an earlier statement she had made to the police implicating him in the shooting. However, McFarland's claim that Ray would have testified in his favor is belied by the very affidavit Ray signed and which McFarland offered in support of his pro se motion for post conviction relief. The affidavit was signed on July 29, 2003, more than a year after McFarland's trial. And while it is true that Ray recanted her previous statement to the police in her affidavit, she also confirms that she refused to testify at his trial. In its decision affirming McFarland's conviction and the trial court's order

8

denying his motion for post-conviction relief, the Wisconsin Court of Appeals recounted in more detail the State's effort to call Ray as a witness:

> The State explained that Ray was in custody and had absolutely refused to testify in the case, even when she was offered immunity for any involvement in McNeal-Veasley's shooting. The prosecutor who interviewed Ray told the trial court, "She indicated ... she was close to the defendant and she had great animosity towards the victim in the case. She would not testify under any circumstances."

(Decision, R. 61, ¶ 34.) The State offered this explanation in support of its request that the court declare Ray unavailable and admit her *Mirandized* statement implicating McFarland. However, it later withdrew its request that Ray's statement be admitted and elected not to call her simply to have her refuse to answer questions. Based upon this record, which McFarland does not challenge, the Court of Appeals rejected McFarland's claim that his trial counsel was ineffective for failing to subpoena Ray to testify for the defense. Counsel was not ineffective the court concluded, "because there is no evidence Ray would have agreed to appear if subpoenaed by the defense." (*Id.* ¶ 36.) Given Ray's absolute refusal to testify, the Court concluded a subpoena would have made no difference in the case. (*Id.*)

McFarland does not claim that the Wisconsin court's determination of the facts is unreasonable and he offers no reason why the analysis of the Court of Appeals is in error. Certainly, its analysis is not contrary to or an unreasonable application of clearly established federal law. I therefore conclude that he is not entitled to relief on that basis under § 2254. *See* 28 U.S.C. § 2254(d). In truth, it appears that McFarland most likely benefitted from Ray's failure to appear and testify at his trial. Had she done so, the State would have been able to introduce her prior statement that McFarland was in fact the shooter as substantive evidence against him. Wis. Stat. § 908.01(4)(a)1. As it turned out, the jury never heard this evidence. In any event, the claim fails and will be summarily dismissed.

9

*7. Failure to discuss McFarland's alibi witnesses in closing argument*

McFarland contends that trial counsel performed deficiently by failing to reference the testimony of McFarland's alibi witnesses in his closing argument. However, he offers nothing to rebut the presumption that counsel's performance fell within the range of reasonable assistance, and does not suggest how this could have prejudiced his case. The claim will be dismissed.

*8. Ineffective assistance at sentencing*

McFarland claims that at sentencing, counsel failed to make positive comments about McFarland's character or object to the setting of restitution, and referred to the victim as a "crack addicted prostitute." McFarland does not indicate what counsel should have informed the court regarding his character or contend that the restitution ordered was unjustified. The Wisconsin Court of Appeals noted that counsel did advise the court that McFarland was not on probation or parole at the time of the offense, and that counsel suggested the court use its own judgment rather than rely on the state's recommendation. The court of appeals recited the trial court's finding that the grave nature of the crime warranted the sentence, and held that counsel's performance did not prejudice McFarland. This conclusion was reasonable, and McFarland's claim will be dismissed.

*9. Cumulative effect of counsel's performance*

Although McFarland asserts as an independent claim that "the cumulative effect of trial counsel's deficient performance prejudiced McFarland," the question of whether he was prejudiced by counsel's alleged errors is a part of the inquiry into whether he was denied effective assistance of counsel. With respect to McFarland's claims of ineffective assistance of counsel, the court is obligated to "consider their cumulative effect in light of the totality of circumstances." *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir. 1984).

10

Case 1:07-cv-01134-WCG    Filed 01/25/08    Page 10 of 17    Document 6

> On one hand, this means that an attorney's individual errors may not, looking at the trial as a whole, cast doubt on the reliability of the result, and therefore would not merit reversal. On the other hand, even if individual acts or omissions are not so grievous as to merit a finding of incompetence or of prejudice from incompetence, their cumulative effect may be substantial enough to meet the *Strickland* test.

*Id.* Accordingly, this is not a separate ground for relief.

### *10. Conflict of Interest*

McFarland alleges that a conflict of interest rendered trial counsel's performance inherently ineffective. He explains in his memorandum in support of his petition that the first attorney assigned to represent him requested and was allowed to withdraw. (Mem. In Supp. at 3.) Another attorney was then assigned, but McFarland later requested that he withdraw as well because of "irreconcilable conflict between himself and Attorney Port." The trial court initially denied, but then granted McFarland's request. Attorney Port was reappointed, however, after the trial court and the Office of the State Public Defender refused to appoint a third attorney. (*Id.* at 2-3.) McFarland argues that the fact that Attorney Port was allowed to represent him despite the conflict of interest violated his Sixth Amendment right to counsel.

The right to effective assistance of counsel "includes the right to representation that is free from conflict of interest." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (internal quotation marks and citation omitted). But a conflict of interest is not the same as a dissatisfaction with one's attorney, which is essentially what McFarland complained of here. An actual conflict of interest results if "the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Ziegenhagen*, 890 F.2d 937, 939 (7th Cir.1989). In criminal cases such a conflict may arise, for example, where an attorney faces the possibility of having to cross-examine his former client. *Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir.1995). McFarland has failed to allege facts suggesting any such conflict of interest existed

11

here. Instead, his complaint is that he disagreed with his attorney's handling of the case and his recommendation that McFarland accept a plea offer, and that his attorney asked to withdraw because he feared McFarland would charge him with providing ineffective assistance if he was not acquitted. If this was enough to demonstrate a conflict of interest, few convictions could stand. Many, if not most, defendants who are convicted despite their claim of innocense, disagree with their attorney's handling of the defense and blame their convictions on their attorneys. If they can demonstrate that the representation provided by their attorney was deficient, they may be entitled to relief. But the mere fact that they were unhappy with his or her handling of the case, or disagreed with the advice the attorney offered, does not establish a conflict of interest. I therefore conclude that his claim fails and will not be allowed to proceed.

*11. Failure to interview potential alibi witnesses*

McFarland further claims trial counsel's assistance was ineffective because counsel failed to interview potential alibi witnesses identified by McFarland. According to McFarland, counsel merely informed the prosecution of the identity of the two individuals so that the police could interview them. "[C]ounsel's failure to investigate potential witnesses can constitute deficient performance." *Davis v. Lambert*, 388 F.3d 1052, 1062 (7th Cir. 2004). However, McFarland does not allege what evidence the witnesses could have provided, or that it could have affected the outcome of his trial. Absent such an allegation of prejudice, the claim fails and will be dismissed. *See U.S. ex rel. DeCreti v. Wilson*, 967 F. Supp. 303, 307-308 (N.D. Ill. 1997).

*12. Failure to cross-examine and impeach witnesses*

McFarland contends that counsel's failure to cross-examine witness Glosson about his prior convictions and impeach witnesses Glosson and McNeal-Veasley with inconsistent prior statements constitutes ineffective assistance. Counsel's decisions regarding the nature and extent of cross-

12

examination are strategic choices ordinarily entitled to great deference. Indeed, the United States Supreme Court has held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Nevertheless, at this stage, I am unable to determine from the face of the petition and the attachments that McFarland is entitled to no relief on this basis. Accordingly, he may proceed on this claim also.

### *13. Failure to object to prosecutorial misconduct*

McFarland claims that the prosecutor wrongfully apprised the jury that a bullet was still lodged in the victim's head, when the victim's medical records indicated that the bullet had actually been removed, and that trial counsel's failure to object to this error constitutes ineffective assistance.[1] However, even if the prosecutor's comments were in error, it is inconceivable how McFarland would have been prejudiced by it. Whether the bullets had been completely removed or not, the crime remains the same. Accordingly, this claim too will be dismissed.

### *14. Inadequate jury instructions*

McFarland also claims his attorney was ineffective in failing to object to inadequate jury instructions. He contends that the jury instructions for the offense of First Degree Reckless Injury While Armed lacked the element of "while armed," as well as the requirement that the State show a nexus between the possession of a dangerous weapon and the underlying crime. He alleges that counsel's failure to object to this legally insufficient instruction deprived him of his right to effective assistance of counsel.

---

[1] McFarland's claim alleging that counsel failed to object to prosecutorial misconduct also reiterates his allegations regarding the admission of hearsay evidence and the prosecution's comments during his opening statement and closing argument. However, I have already addressed those claims.

McFarland is mistaken in his contention that the crime of First Degree Reckless Injury includes as an element that the defendant was armed. As defined by the Wisconsin Statutes, the crime contains three elements: (1) that the defendant caused great bodily harm to another; (2) that the defendant cause great bodily harm by criminally reckless conduct; and (3) that the cricumstances of the defendant's conduct show utter disregard for human life. Wis. Stat. § 940.23(1); Wis Criminal JI 1250. In this case the State had charged McFarland with committing the crime of First Degree Reckless Injury while armed pursuant to Wis. Stat. § 939.63, which had the effect of increasing the applicable penalty by five years. While it is true that in order for the penalty enhancement to apply the jury was required to find that McFarland committed the underlying crime while armed, the jury was properly instructed as to this requirement. McFarland has attached a copy of the jury instruction to his memorandum in support of his petition, Ex. W, and it is clear from reading the instruction that it properly instructed the jury on this issue.

Relying on *State v. Peete*, 185 Wis.2d 4, 8-10, 18-21, 517 N.W.2d 149 (1994), McFarland also claims the jury instruction was defective because it failed to instruct the jury on the requirement that there be a nexus between his possession of the dangerous weapon and the underlying crime. But here, the nexus was obvious. McFarland was charged with shooting a firearm through a door with another person on the other side. As *Peete* acknowledges, "[i]f a defendant commits a crime while using or threatening to use a dangerous weapon, a nexus is established." 517 N.W.2d at 154. Under these circumstances, no further instruction was needed. It thus follows that counsel was not ineffective in failing to object, and this claim too must be dismissed.

*15. Insufficiency of evidence*

McFarland claims that his attorney provided ineffective assistance by failing to move for dismissal on the ground that the State failed to meet its burden of proof. It is clear from the petition

14

and its attachments that this claim has no merit. From the summary of evidence set forth by the Court of Appeals, it is apparent that McFarland was positively identified as the shooter by the victim to whom he was no stranger. She testified that she saw him on her porch and that he shot her several times. He was also identified by a neighbor as he was fleeing the scene immediately afterwards. In light of these eyewitness identifications of McFarland as the shooter, his conclusory allegation that the evidence was insufficient to support his conviction is without merit. Even if his attorney did fail to move for dismissal, no prejudice occurred. Accordingly, this claim too will be dismissed.

### C. Interests of Justice

Finally, McFarland claims his conviction should be reversed in the interest of justice. This claim was summarily dismissed on its merits by Chief Judge Randa in his initial screening order of McFarland's earlier petition. Judge Randa noted that "'interest of justice' is not a ground for relief. It does not state what federal law was violated by his conviction and sentence." (Oct. 12. 2007 decision at 2.) McFarland abandoned his appeal of Judge Randa's decision. Even now, he makes no claim that Judge Randa's conclusion was in error and offers no reason why he should be allowed to pursue this claim here. I conclude it must be dismissed. To the extent he is able to show he is entitled to relief based on specific claims I have found to have colorable merit, the interests of justice will be served. But no separate claim based simply on "the interest of justice" will proceed.

**Conclusion**

In sum, McFarland may proceed with his Confrontation Clause claim based on the State's use of hearsay evidence and his claims of ineffective assistance of counsel based on his attorney's

15

failure to object to the admission of such testimony and meaningfully cross-examine NcNeal-Veasley and Glossen. All other claims are dismissed.

Petitioner filed with his petition an application for leave to proceed *in forma pauperis*. He also, however, has submitted the $5 filing fee. Because he paid the filing fee, his request to proceed *in forma pauperis* will be denied as moot.

**THEREFORE, IT IS ORDERED** that within 30 days of the date of this order respondent shall either file an appropriate motion seeking dismissal or answer the petition, complying with Rule 5 of the Rules Governing § 2254 Cases, and showing cause, if any, why the writ should not issue.

**FURTHER, IT IS ORDERED** that unless respondent files a dispositive motion in lieu of an answer, the parties shall abide by the following schedule regarding the filing of briefs on the merits of petitioner's claims: (1) petitioner has already filed a brief in support of his petition; (2) respondent shall have 45 days following the filing of her response within which to file a brief in opposition; and (3) petitioner shall have 30 days following the filing of respondent's opposition brief within which to file a reply brief, if any.

If respondent files a dispositive motion and supporting brief in lieu of an answer, this briefing schedule will be suspended and the briefing schedule will instead be as follows: (1) petitioner shall have 30 days following the filing of respondent's dispositive motion and supporting initial brief within which to file a brief in opposition; and (2) respondent shall have 15 days following the filing of petitioner's opposition brief within which to file a reply brief, if any.

Pursuant to Civil L.R. 7.1(f), the following page limitations apply: briefs in support of or in opposition to the habeas petition or a dispositive motion filed by respondent must not exceed thirty pages and reply briefs must not exceed fifteen pages, not counting any statements of facts, exhibits, and affidavits.

16

**FURTHER, IT IS ORDERED** that petitioner's request for leave to proceed *in forma pauperis* is denied as moot.

Petitioner is advised that he must send copies of all future filings with the court to counsel for respondent. Until respondent files his or her answer, these copies should be sent to Gregory Weber at the address below.

Pursuant to Rule 4 of the Rules Governing § 2254 Cases, copies of the petition and this order will be mailed to respondent and to the Attorney General for the State of Wisconsin, c/o Gregory M. Weber, Assistant Attorney General, P.O. Box 7857, Madison, WI 53707.

This district's form regarding magistrate judge jurisdiction should be included with copies of this order and returned by the parties as directed on that form.

Dated this  25th  day of January, 2008.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge