# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JERMAINE MCFARLAND,

        Petitioner,

   v.                                      Case No. 07-C-1134

JODINE DEPPISCH,

        Respondent.

## DECISION AND ORDER

On March 26, 2002, Petitioner Jermaine McFarland was convicted in Milwaukee County Circuit Court of first degree reckless injury with use of a dangerous weapon, endangering safety by reckless use of a firearm, and felon in possession of a firearm, each as a habitual criminal. On June 5, 2002, he was sentenced to 37 years imprisonment, and he is currently incarcerated at Fox Lake Correctional Institution ("FLCI"). McFarland seeks federal habeas corpus under 28 U.S.C. § 2254, claiming that his state court conviction and sentence were imposed in violation of the Constitution. For the reasons below, his petition will be denied.

## BACKGROUND

**A. Trial**

A jury found that McFarland shot Illeana McNeal-Veasley multiple times through the door to her Milwaukee residence in the early morning hours of October 10, 1999, and seriously injured her. The strongest evidence against McFarland was the testimony of McNeal-Veasley herself. At

the time of the shooting, McNeal-Veasley lived in the upper level of a residence at 1332 N. 24th Place in Milwaukee with her five children. (Dkt. 15, Ex. BB at 41.) McNeal-Veasley testified that she was awakened by a knock at her door at 2:00 a.m. on October 10, 1999. She proceeded down the stairs to answer the door. When she arrived at the door, she asked who was there, and heard a voice she recognized as McFarland's respond "it's J. Money." (*Id.* at 41-43.) McNeal-Veasley explained that she looked out and recognized McFarland, whom she had met about four months earlier and with whom on a number of occasions she had exchanged sex for drugs. At the time, McNeal-Veasley knew McFarland only by the name "J. Money." (*Id.* at 43-46, 48.) When she saw him through the window on her porch in the early morning hours of October 10, 1999, McNeal-Veasley told McFarland that nothing was going on, that she and her children had been sleeping, and that no one else was at her home. (*Id.* at 48-49.) She further testified, however, that she then saw that McFarland had a gun and began firing. McNeal-Veasley was struck in the head and neck. (*Id.* at 49.)

Despite the severity of her injuries and critical medical condition, McNeal-Veasley attempted to identify her assailant when questioned by police at the hospital. She kept trying to say "J. Money" and ultimately tried to write the name on a piece of paper. (*Id.* at 53.) The investigation appears to have stalled apparently because McNeal-Veasley was unable to provide McFarland's true name. She also underwent significant treatment and rehabilitation. When McFarland became a suspect about a year-and-a-half later, McNeal-Veasley identified him in a photographic array. (*Id.* at 68.) At trial, she testified that there was "no doubt" in her mind that McFarland was the man who shot her. (*Id.* at 50.)

2

Another eyewitness, Jerome Glosson, also testified at trial. Glosson testified that he lived across the street from McNeal-Veasley and that he was on the porch to his second-floor apartment at the time of the shooting. (*Id.*, Ex. DD at 13-15.) He claimed he saw a man walk across the street and onto McNeal-Veasley's porch. He later heard five or six gunshots and saw the man run from the porch and into an alley. (*Id.* at 17-20.) Glosson said he recognized the man as someone he had seen in the neighborhood, but did not know his name. (*Id.* at 21-22.) Glosson later picked McFarland's photo out of an array and identified him in court as the man he had seen on McNeal-Veasley's porch. (*Id.* at 33-34.) At trial he testified that there was no doubt in his mind that McFarland was the shooter. (*Id.* at 37.)

Glosson also testified that a woman named Rochelle Ray, who lived across the street, told him she was McFarland's cousin. (*Id.* at 26.) Ray told Glosson she knew who shot McNeal-Veasley, but refused to tell him who the shooter was. (*Id.* at 24.) Glosson told police that Ray "was bragging" about knowing who the shooter was and that she accused McNeal-Veasley of having broken into Ray's home some time prior to the shooting. Glosson also stated Ray claimed that McNeal-Veasley had given her cousin a venereal disease. (*Id*. at 27-28.) Ray appears to have later told police that McFarland was the shooter, but she refused to testify at trial even after being offered immunity. (*Id.* at 3-5.)

McFarland's defense was that he was not the shooter. He offered an alibi in the form of his sister's testimony that he was babysitting her children the night of the shooting while she and a friend went out. The testimony of his sister and her friend appears to have been based on their recollection of their general routine in October of 1999, however, as opposed to a specific recollection of the events of October 10th. (*Id.*, Ex. EE at 6, 37.) Both nevertheless testified that

3

McFarland was sound asleep when they returned to the house in the early morning hours of that day. McFarland likewise testified that he was babysitting for his sister at the time of the shooting and denied he was in the area. (*Id.* at 55-56.) The jury rejected McFarland's alibi defense and found him guilty of all three charges. (*Id.* at 192.)

**B. Post Trial**

At trial, McFarland was represented by Attorney Kenneth Port. Following his sentencing, McFarland, then represented by Attorney Scott Obernberger, filed a motion for post-conviction relief pursuant to Wis. Stat. § 974.02 alleging ineffective assistance of his trial attorney. Among other errors, Attorney Obernberger asserted that trial counsel was ineffective in failing to subpoena Ray for trial. Had she testified, post-conviction Attorney Obernberger claimed that Ray would have recanted her statements to the police implicating McFarland and stated she had no knowledge as to who the shooter was. (Dkt. # 13, Ex. B. at App. 131.) As a result of trial counsel's failure to subpoena Ray, Attorney Obernberger argued that the jury never heard Ray's recantation. The error was compounded in this case, Attorney Obernberger argued, by trial counsel's consistent failure to challenge hearsay statements allegedly made by Ray. Specifically, Attorney Obernberger argued that the testimony of Glosson recounting Ray's statements that she knew who the shooter was, that she was related to McFarland, and that McNeal-Veasley had previously broken into her apartment and had also given a venereal disease to McFarland had created in the eyes of the jury a motive for McFarland to have committed the offense. (*Id.* at 131-132.) Attorney Obernberger argued that the testimony recounting Ray's alleged statements was inadmissible hearsay and that trial counsel was ineffective in failing to object.

4

The trial court denied McFarland's motion without a hearing. As to the claim that trial counsel was ineffective in failing to subpoena Ray, the court noted that Ray had been subpoenaed by the State, was in custody at the time of the trial, and had adamantly refused to testify. There was no reason to believe she would have responded differently to a subpoena from the defense. More importantly, had Ray testified, her statement to the police directly implicating McFarland in the shooting would have been admitted, at least as a prior inconsistent statement. *See* Wis. Stat. 908.01(4)(a)1. (*Id*. Ex. B. at App. 149-50.) Thus, the defense clearly benefitted by Ray's refusal to testify. As to the alleged hearsay testimony, the trial court noted that the jury had already heard from McNeal-Veasley that she met McFarland through Ray, that Ray and McFarland had a close relationship, and that Ray had accused her of breaking into her home. (Dkt. # 15, Ex. BB at 72-73, 75.) In addition, McFarland admitted in the course of his own testimony that he told Ray he had a venereal disease, although he denied that he contracted it from McNeal-Veasley. Under these circumstances, the court concluded that McFarland suffered no prejudice from Glosson's testimony. (Dkt. # 13, Ex. B. at App. 149-51.)

McFarland next appealed to the Wisconsin Court of Appeals again attacking trial counsel's failure to subpoena Ray and again raising in that context his failure to object to Glosson's testimony recounting Ray's out-of-court statements. This time, however, Attorney Obernberger argued that counsel's failure to object not only allowed hearsay to be admitted but also violated McFarland's Sixth Amendment right to confront the witnesses against him under the Supreme Court's then recent decision in *Crawford v. Washington*, 541 U.S. 36 (2004). (*Id*., Ex. B at 31-38.) Concluding from the record that there was no showing Ray would have testified in any event, the Wisconsin Court of Appeals, in an unpublished decision issued on April 12, 2005, affirmed McFarland's

5

conviction and the denial of his motion for post-conviction relief without reaching the Confrontation Clause claim he had raised. (*Id.*, Ex. E, ¶ 37.) McFarland petitioned the Wisconsin Supreme Court for review alleging, *inter alia*, that the court of appeals had failed to address his Confrontation Clause claim, but his petition was denied. (*Id.*, Ex. F.)

McFarland thereafter returned to the trial court and on June 7, 2006, filed a motion seeking relief pursuant to Wis. Stat. § 974.06. This time, McFarland, now *pro se*, explicitly claimed that the admission of Ray's out-of-court statements violated his rights under the Confrontation Clause of the Sixth Amendment as a separate ground for relief. (*Id.* Ex. H at App. 131.) He also claimed for the first time that counsel was ineffective for failing to adequately cross-examine and impeach Glosson and McNeal-Veasley. (*Id.* Ex. H. at App. 135-38.) The result, however, was the same. The court found for the same reasons given in its decision denying McFarland's previous motion for post-conviction relief that he suffered no prejudice as the result of counsel's failure to object and the admission of Ray's out-of-court statements. The trial court also found that there was no violation of McFarland's rights because the statements were not offered for the truth of the matter asserted but simply to show how the investigation developed. (*Id.* Ex. H at App. 159-60.) Finally, the trial court concluded that further cross-examination of either Glosson or McNeal-Veasley would not have changed the result. (*Id.* Ex. H at App. 160-61.)

McFarland again appealed to the Wisconsin Court of Appeals, which again affirmed the lower court's order denying his motion for post-conviction relief. The appellate court rejected McFarland's claim that his trial counsel was ineffective in failing to object to testimony concerning Ray's statements, noting that counsel did object and successfully prevented admission of Ray's statement identifying McFarland as the shooter. As to the remaining statements, the court agreed

6

with the trial court that no violation of McFarland's rights occurred because the statements were not offered for the truth of the matter asserted but simply to show how the investigation proceeded. The appellate court also agreed with the trial court that further cross-examination of Glosson and McNeal-Veasley would not have changed the result. Each of McFarland's claims were ultimately rejected in the Court of Appeals' May 22, 2007 decision. (*Id.*, Ex. K.)

McFarland then filed a petition for review with the Supreme Court of Wisconsin. On June 20, 2007, the Court ordered that McFarland submit a statement in support of his petition by August 10, 2007, and indicated that a failure to do so would result in the dismissal of his petition. (Br. Supp. Pet., Ex. JJ.) By letter dated August 2, 2007, McFarland voluntarily withdrew his petition for review pending before the Wisconsin Supreme Court, resulting in its dismissal on August 6, 2007. McFarland claims he withdrew his petition because he was unable to afford postage to submit a statement in support of his petition for review. (Br. Supp. Pet. 26.) He alleges that he applied for a legal loan through FLCI, but that prison officials there refused to process his application. (Pet. Reply 8, Ex. G-1.)

On September 7, 2007, McFarland filed a habeas petition, which was ultimately dismissed without prejudice by Chief Judge Randa as a mixed petition containing both exhausted and unexhausted claims. On December 20, 2007, he filed the instant petition, and was allowed to proceed with the three claims described above: (1) his rights under the Confrontation Clause of the Sixth Amendment were violated when the prosecution was allowed to introduce Ray's statements through the testimony of witnesses Glosson and again through Detective Victor Wong of the Milwaukee Police Department, (2) trial counsel provided ineffective assistance by failing to object to the admission of Ray's statements through this testimony, and (3) trial counsel provided

7

ineffective assistance by failing to cross-examine witness Glosson about his prior convictions and impeach witnesses Glosson and McNeal-Veasley with inconsistent prior statements.

## ANALYSIS

**I. Procedural Default**

The respondent contends at the outset that McFarland has procedurally defaulted all of the claims raised in his petition. An application for writ of habeas corpus from a person in state custody shall not be granted unless it appears that (a) the applicant has exhausted state remedies, or (b) there is no available state corrective process or circumstances exist that render such process ineffective to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). To exhaust a claim, the petitioner must provide the state courts with a full and fair opportunity to review his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This means that the petitioner must "'fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A specific claim is not considered exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). This requires the petitioner to appeal adverse state court decisions all the way to the state supreme court when doing so is part of the ordinary appellate review procedure in that state. *O'Sullivan*, 526 U.S. at 847. The doctrine of exhaustion allows state courts the "initial opportunity to pass on and correct alleged violations of its prisoners' federal rights." *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971) (internal quotation marks omitted). Generally, a petition for writ of habeas corpus should be dismissed if state remedies have not been exhausted as to any one of the petitioner's federal

8

claims. *Rose v. Lundy*, 455 U.S. 509 (1982); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 667 (7th Cir. 1990).

Closely related to the doctrine of exhaustion is the doctrine of procedural default, which like the exhaustion doctrine is grounded in principles of comity, federalism, and judicial efficiency. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). The procedural default doctrine will normally preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735, n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 263, n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *O'Sullivan*, 526 U.S. at 853-54.

Here, the respondent argues that McFarland defaulted his confrontation claim by not raising it until his brief in the Wisconsin Court of Appeals on his direct appeal (Br. Opp. 9), and that he procedurally defaulted his ineffective assistance claims, as well as any attempt to reassert his confrontation claim, by abandoning his petition for Wisconsin Supreme Court review of the Court of Appeals decision affirming the trial court's denial of his § 974.06 motion. (Br. Opp. 11.) Even assuming the alleged failure of the institution to process his loan application would constitute cause for his default, respondent argues that McFarland has presented no evidence to support his claim that FLCI did in fact refuse to process his loan application. Under these circumstances, the

9

respondent contends McFarland must be found to have procedurally defaulted each of the claims on which he was allowed to proceed and his petition should be dismissed.

Although the presentation of McFarland's confrontation clause claim, couched as it is in a claim of ineffective assistance of counsel, could have been more clearly presented in the Wisconsin courts, I conclude that its presentation in McFarland's initial appeal was sufficient to allow the state court's a full and fair opportunity to address it. It is true that post-conviction counsel argued only on hearsay grounds in the trial court and didn't even assert it as a separate ground for relief, arguing instead that the error compounded the harm caused by his failure to subpoena Ray for trial. But he did argue the confrontation issue explicitly on appeal and in his petition for review, albeit again not as a separate and independent claim. (Ex. B at 32-38; Ex. F at 3.) The fact that those courts chose not to address it does not mean it was not presented.

A petitioner must present his claims to state courts in the time and manner required by state law. *See Brooks v. Walls*, 279 F.3d 518, 523 (7th Cir. 2002). The general rule in Wisconsin, as in federal court, is that the court will not consider an issue raised for the first time on appeal. *State v. Whitrock*, 161 Wis. 2d 960, 468 N.W.2d 696 (Wis. 1991). However, the court may consider a constitutional issue raised for the first time on appeal at its discretion, and will do so if "it is in the best interests of justice." *Id.*,161 Wis. 2d at 970, 468 N.W.2d at 700. McFarland's confrontation claim challenges the admission of testimony at trial under the standard set forth in *Crawford v. Washington*, 541 U.S. 36 (2002), which was decided March 8, 2004, after the trial court had already denied McFarland's first post-conviction motion. The Wisconsin Court of Appeals was faced with a similar scenario in *State v. Sevanh*, 2005 WI App 245, 287 Wis. 2d 876, 707 N.W.2d 549, and addressed the merits of a confrontation claim based on *Crawford* where the defendant had not raised

10

the issue before the trial court, but could not have done so because *Crawford* had not yet been decided when the trial court proceedings concluded. *Id*. 2005 WI App 245, ¶ 11, n.2. The court noted its discretionary authority to consider the issue where it was in the "best interests of justice," both parties had had the opportunity to brief the issue, and there were no factual issues to resolve. *Id*. Here, as in *Sevanh*, the issue could not have been raised earlier, both parties had the opportunity to brief the issue, and there were no outstanding factual disputes to resolve.

The Seventh Circuit has held that a habeas petitioner has not procedurally defaulted a claim where "in the normal course of post-conviction review in state court, [he] raised issues using a method that would allow the court, in its discretion, to consider federal claims of unconstitutionality." *Kizer v. Uchtman*, 165 Fed. App. 465, **4 (7th Cir. 2006). Although the Wisconsin Court of Appeals did not address McFarland's confrontation claim in its decision denying his request for relief on direct appeal, it was within its discretion to do so. McFarland also fairly presented his claim to the Wisconsin Supreme Court, which denied review. I thus conclude that the claim was not procedurally defaulted.

McFarland's remaining claims, however, were not properly presented to the state courts. McFarland claims that trial counsel provided ineffective assistance by failing to impeach Glosson with evidence that he actually had two prior convictions when Glosson testified that he had only one, as well as with Glosson's prior inconsistent statements to detectives. McFarland also challenges trial counsel's failure to impeach McNeal-Veasley's testimony that she still had bullet fragments in her head with evidence from medical reports that the bullet had been surgically removed. These claims, however, were not raised by McFarland during his direct appeal. McFarland did assert counsel's ineffectiveness for failure to impeach Glosson regarding his prior

11

convictions and prior inconsistent statements in his pro se motion for post-conviction relief. But he voluntarily withdrew this claim before it was fairly presented to the Wisconsin Supreme Court. Thus, these claims have been procedurally defaulted. And his claim that counsel was ineffective in failing to impeach McNeal-Veasley's testimony that fragments of the bullet remained in her head was never presented to the state courts in any of McFarland's motions. It is therefore procedurally defaulted as well.

Despite this procedural default, I may consider the merit of his claims if McFarland either demonstrates cause for his default and prejudice resulting therefrom, or that a miscarriage of justice will result if I do not. *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). As the Seventh Circuit Court of Appeals has explained, "[e]stablishing cause ordinarily requires demonstrating an external obstacle preventing the petitioner from fairly presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required. The miscarriage-of-justice-exception applies when the petitioner can demonstrate that he is actually innocent." *Id*. (internal citation omitted). Here, McFarland claims that he was unable to pay for the copies and postage required to present his claims to the Wisconsin Supreme Court, because prison officials refused to process his application for a legal loan. (Pet. Reply 8.) Even if an inability to pay these costs could demonstrate cause for procedural default, McFarland has not shown such an extreme lack of financial resources during the relevant period that he could not pay postage. In addition, he has made no showing that the defendants wrongfully refused him a loan, or otherwise prevented him from pursuing his appeal. Although McFarland calls the court's attention to the loan application he filed in this court (E.D. Wis. Case No. 07-mc-68-JPS), the August 8, 2007 application requested a loan to cover the expense of copies and the five dollar filing fee required in connection with a

12

federal habeas petition. That application postdated his voluntary dismissal of his petition for review before the Wisconsin Supreme Court in any event. Finally, McFarland has made no argument and submitted no evidence to demonstrate his actual innocence. Accordingly, he has failed to establish cause for his procedural default and the claims must be dismissed.

It is worth noting, however, that even if McFarland had not procedurally defaulted on these claims and they were considered on their merits, the result would be the same. To prevail on a claim of ineffective assistance of counsel, McFarland would have to show that counsel's "deficient performance prejudiced the defense," such that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 668, 687 (1984). The Wisconsin Court of Appeals concluded that the difference between whether Glosson had one or two convictions (one of which was a forfeiture) was not substantial enough to have affected the jury's verdict, and that the jury heard that Glosson had changed his statement over time when he admitted as much in his testimony at trial. Applying *Strickland,* the Court held any failure by trial counsel to further impeach Glosson's testimony at trial was harmless, and thus did not render his assistance ineffective. This was not an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d) (habeas relief may not be granted on a claim adjudicated on its merits in state court unless the state court decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts). McFarland's claim based on counsel's failure to impeach McNeal-Veasley also fails on its merits. Even if all bullet fragments were completely removed from the victim's head during her surgery, this fact would not have been likely to make a difference in the outcome of the case.

13

**II. The Merits of McFarland's Exhausted Claims**

**A. AEDPA Standard**

I now turn to the merits of the claims which McFarland has properly exhausted. Actually, only one claim remains – the claim of ineffective assistance of counsel based on trial counsel's failure to object on Sixth Amendment confrontation grounds to the testimony recounting Ray's out-of-court statements that (1) she knew who the shooter was; (2) she and McFarland were related; (3) Ray was angry at McNeal-Veasley because she believed McNeal-Veasely had broken into her apartment some time before the shooting; and (4) McNeal-Veasley had infected McFarland with a venereal disease. Although McFarland also claimed the trial court violated his Sixth Amendment rights under the Confrontation Clause by admitting such testimony, it is clear the trial court did not err in this regard because McFarland's trial counsel never objected on this ground. Thus, to the extent the claim is viable, it must be viewed as a claim of ineffective assistance of counsel, and it is in that form that the claim will be evaluated.

A federal court is authorized to grant habeas corpus relief to a state prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The granting of such relief by federal courts is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "significantly constrains any federal court review of a state court conviction." *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

14

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In evaluating an application for habeas corpus pursuant to the judgment of a state court, facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant is burdened with rebutting the presumption of correctness by clear and convincing evidence. *Id.*

When determining whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law, lower federal courts must look exclusively to Supreme Court precedent in reviewing habeas petitioners' claims. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan*, 141 F.3d 1232, 1234 (7th Cir. 1998). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

15

McFarland claims he was deprived of his Sixth Amendment right to the effective assistance of counsel when his attorney failed to object to the out-of-court statements of Rochelle Ray. Claims for ineffective assistance of counsel are generally analyzed under the two-step test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that the counsel's performance was deficient." *Id.* at 687. This means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The second part of the *Strickland* analysis requires that the defendant show that "the deficient performance prejudiced the defense." *Id*.

Federal law, as determined by the Supreme Court, has long recognized the right of a person accused of a crime to confront the witnesses against him and to subject such witnesses to cross-examination, "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970). This fundamental right, specifically enumerated in the Sixth Amendment, applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). But the Court has never held that the Confrontation Clause bars the use of all hearsay evidence at a criminal trial. Such an approach, the Court has noted, has been "long rejected as unintended and too extreme." *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), *overruled on other grounds by Crawford v. Washington,* 541 U.S. 36 (2004). Thus, the issue courts must determine is which statements can be admitted into evidence without running afoul of the Sixth Amendment.

In *Crawford*, the Supreme Court reversed a defendant's conviction for assault and attempted murder on the ground that the introduction at his trial of a recorded statement by his wife made during a police interrogation violated his Sixth Amendment right to confront the witnesses against him. The Court held that statements considered "testimonial" in nature cannot be admitted unless

16

the witness who made them is unavailable and the defendant has had a prior opportunity for cross-examination of that witness. *Id*. at 36. In so ruling, the Court explicitly rejected its language in *Ohio v. Roberts*, that appeared to permit the use of such statements when the witness was unavailable as long as the statement bore "adequate indicia of reliability." 448 U.S. at 66. The *Crawford* Court noted, however, that even where statements fell within the definition of "testimonial," they were not barred by the Confrontation Clause if they were offered "for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59, n.9.

Here, it seems clear that at least some of the statements challenged by McFarland should not have been admitted. Ray did not testify, and thus McFarland was not able to confront or cross-examine her regarding the statements she supposedly made to Glosson that she knew who the shooter was, that she was related to McFarland, and McNeal-Veasley had previously broken into Ray's apartment and had infected McFarland with a venereal disease. The statements were apparently offered to suggest a motive for McFarland's attack on McNeal-Veasley. (Dkt. #13, Ex. EE. at 154-55.) The state courts concluded that the statements were not hearsay and no violation of McFarland's confrontation rights occurred because the statements were not offered to prove the truth of the matter asserted, but rather to "establish how the investigation proceeded." (Dkt. #13, Ex. K, ¶ 11.) But Ray's statements had nothing to do with how the investigation proceeded. The lead detective in the case testified that it was the victim's recollection of where J. Money's sister lived that led to the identification of McFarland as a suspect. And once that occurred, McNeal-Veasley and Glosson immediately identified him as the shooter. (Dkt. # 13, DD. at 81.) Based on this sequence of events, the unsupported conclusion that the statements were offered simply to show how the investigation proceeded and not for the truth of the matters asserted cannot stand. I thus

17

conclude that counsel erred in failing to object to the testimony recounting Ray's out-of-court statements.

But it does not follow that McFarland is entitled to relief. Under the *Strickland* test, even if counsel's performance was deficient, a petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," meaning "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Moreover, "[i]n weighing the effect of counsel's errors, the court must consider the totality of the evidence before the judge . . . . [A] verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001).

Under this test, McFarland's claim still fails because counsel's failure to object to the testimony recounting Ray's statements made no difference. Even if counsel had objected and successfully kept the statements out, the outcome would be the same. As the trial court noted, the facts that McFarland and Ray had a close relationship and that Ray had accused McNeal-Veasley of breaking into her apartment were already in the record as a result of the direct examination of McNeal-Veasley. Likewise, McFarland admitted in the course of his testimony that he had contracted a venereal disease, though he denied that McNeal-Veasley was the source. In the face of McNeal-Veasley's unequivocal identification of McFarland, a person with whom she had developed a personal relationship, combined with Glosson's similarly unequivocal identification of McFarland, as the shooter, Ray's statement suggesting that McFarland may have thought that McNeal-Veasley infected him with a venereal disease did not make a difference. Given the strength

18

of the evidence against McFarland, the addition of this evidence, even if improper, does not undermine confidence in the outcome of the trial. For this reason, as well, the petition will be denied.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and this case is **DISMISSED**.

Dated this ___9th___ day of June, 2008.

                                                     s/ William C. Griesbach
                                                   William C. Griesbach
                                                   United States District Judge